**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GERARD PARVILUS,

        Petitioner,

v.                                  No. CV 17-268 WJ/CG

RAYMOND SMITH, Warden,
Lea County Correctional Facility, et al.

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Gerard Parvilus'

*Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State*

*Custody* (the "Petition"), (Doc. 1), filed February 27, 2017, *Respondents' Answer to Pro*

*Se Petitioner Gerard B. Parvilus' Petition for Writ of Habeas Corpus (28 U.S.C. § 2254)*

*[Doc. 1]* (the "Response"), (Doc. 13), filed August 1, 2017, and *Petitioner's Response to*

*Respondents' Answer to Pro Se Petitioner Gerard B. Parvilus' Petition for Writ of*

*Habeas Corpus* (the "Reply"), (Doc. 14), filed August 11, 2017. This matter was

reassigned to Chief United States Magistrate Judge Carmen E. Garza on October 29,

2018. (Doc. 15). Thereafter, on November 27, 2018, Chief United States District Judge

William P. Johnson referred this case to the undersigned to perform legal analysis and

recommend an ultimate disposition. (Doc. 16).

After considering the parties' filings, the record, and the relevant law, the Court

**RECOMMENDS** that the Petition, (Doc. 1), be **DENIED**, and this case be **DISMISSED**

**WITH PREJUDICE**.

## I.    Factual Background

In early 2007, Mr. Parvilus and his wife, Jahaira Parvilus, began experiencing marital problems and discussed divorce. (Doc. 13-1 at 61). Both Mr. and Mrs. Parvilus were members of the United States Air Force and served the United States in their official capacities overseas. *Id.* at 60-61. On February 17, 2008, Mrs. Parvilus called Mr. Parvilus, who was then stationed in South Korea, and informed him of her affair with another Air Force servicemember, Pierre Smith. *Id.* at 63. During the phone call, Mr. Parvilus also learned of his wife's pregnancy by Mr. Smith and her subsequent abortion. *Id.*

On February 20, 2008, Mr. Parvilus left his duty station in South Korea and returned to Alamogordo, New Mexico, where his wife and Mr. Smith resided. *Id.* Two days later, Mr. Parvilus entered his wife's apartment through an unlocked window and encountered Mr. Smith using the toilet. *Id.* at 64. Mr. Parvilus then duct-taped Mr. Smith, asked him a series of questions about his relationship with Mrs. Parvilus, and threatened him with a gun. *Id.* at 64-65. Eventually, Mr. Parvilus released Mr. Smith unharmed. *Id.* at 65.

The two men then went together to Mr. Parvilus' hotel room at the Hampton Inn. *Id.* The parties dispute whether Mr. Smith voluntarily accompanied Mr. Parvilus to the hotel and whether Mr. Parvilus' subsequent actions were in self-defense or otherwise mitigated. *Id.* It is undisputed, however, that Mr. Parvilus stabbed Mr. Smith to death and left his body on the hotel room floor. *Id.* Mr. Parvilus then returned to his wife's apartment to confront her when she arrived home from work. *Id.* at 65-68. After Mrs. Parvilus arrived, Mr. Parvilus threatened to kill himself, hit her in the forehead with the

butt of his gun (it is unclear whether he did so accidentally or intentionally), and questioned her about her affair with Mr. Smith. *Id.* at 67-68.

The couple's testimony differs regarding whether Mrs. Parvilus then voluntarily accompanied her husband to the Hampton Inn, or whether Mr. Parvilus forced her to accompany him at gunpoint. *Id.* at 68. Undisputedly, when Mr. and Mrs. Parvilus arrived at the hotel room, Mrs. Parvilus saw Mr. Smith's body "lying on the floor between the beds with a gaping hole in his chest." *Id.* After several threats of suicide and phone calls to relatives, Mr. Parvilus drove to the New Mexico state police station and surrendered to law enforcement. *Id.* at 68-69.

## II.    Procedural Posture

On November 3, 2009, in the Twelfth Judicial District Court, Otero County (the "state trial court"), a twelve member jury returned a verdict finding Mr. Parvilus guilty of the following crimes: (1) murder in the second degree; (2) two counts of kidnapping in the first degree; (3) aggravated burglary with a deadly weapon; (4) aggravated assault with a deadly weapon on a household member; and (5) interference with communications. (Doc. 13-1 at 1). The jury found Mr. Parvilus not guilty of a second count of aggravated burglary with a deadly weapon. *Id.* at 1-2.

 Following trial, defense counsel moved for a judgment notwithstanding the verdict ("JNOV") to dismiss the jury's conviction for the first count of aggravated burglary with a deadly weapon. *Id.* at 2. The state trial court granted defense counsel's motion, finding that a charge of aggravated burglary involving a husband and wife was legally impossible, because the husband's entry into his wife's home could not be considered "unauthorized," as required by statute. *Id.* at 15. In support of this conclusion, the state

trial court relied on a 1907 New Mexico domestic-affairs statute, N.M.S.A. § 40-3-3, which provides that neither husband nor wife can be excluded from the other's dwelling. (Doc. 13 at 3). The state trial court reasoned that because the domestic-affairs statute made entry into his wife's dwelling "authorized," Mr. Parvilus could not be convicted of burglary in a home he was legally permitted to enter. (Doc. 13-2 at 63-64).

With the aggravated burglary conviction dismissed, Mr. Parvilus was ultimately sentenced for: (1) murder in the second degree; (2) two counts of kidnapping in the first degree; (3) aggravated assault with a deadly weapon on a household member; and (4) interference with communications. (Doc. 13-1 at 2). The state trial court sentenced Mr. Parvilus to 34.5 years with the New Mexico Department of Corrections. *Id.*

The State of New Mexico (the "State") filed an appeal, arguing the state trial court's JNOV for aggravated burglary was erroneous and limited protection to future victims of domestic violence. *Id.* at 12. Mr. Parvilus cross-appealed, challenging all of his convictions on various grounds. *Id.* at 8. The New Mexico Court of Appeals (the "court of appeals") affirmed the state trial court's opinion, agreeing that the domestic-affairs statute made aggravated burglary of Mrs. Parvilus' home a legal impossibility. (Doc. 13-2 at 73-74). In addition, the court of appeals affirmed Mr. Parvilus' other convictions, concluding there were no reversible-errors in the state trial court's decision below. *Id.* at 74-87.

Both the State and Mr. Parvilus petitioned for a writ of certiorari to the New Mexico Supreme Court (the "state supreme court"), challenging the court of appeals' decision. (Doc. 13-3 at 1, 42-43). The state supreme court granted the State's petition for certiorari, agreeing that § 40-3-3 of the domestic-affairs statute does not provide

immunity for burglary of a spouse's residence. *Id.* at 86-87, 98. The state supreme court therefore reversed the opinions below and remanded the case to the state trial court to resentence Mr. Parvilus with the reinstated aggravated burglary conviction. *Id.* In addition, the state supreme court denied Mr. Parvilus' petition for certiorari, affirming his convictions. (Doc. 13-3 at 42). On remand, Mr. Parvilus was resentenced to 43.5 years with the New Mexico Department of Corrections. (Doc. 13-1 at 4-6).

Mr. Parvilus then filed a petition for a writ of habeas corpus in the state trial court, arguing that his sentence was contrary to law. (Doc. 13-6 at 16). Specifically, Mr. Parvilus presented five arguments: (1) his wife's affair was sufficient provocation to reduce the homicide charge to voluntary manslaughter, and the jury therefore should have been instructed on sufficient provocation; (2) his counsel's failure to argue for an explanatory instruction on sufficient provocation constituted ineffective assistance of counsel in violation of his Sixth Amendment right; (3) his kidnapping convictions were invalid because the restraint of his victims was not longer than necessary to facilitate the commission of another crime, aggravated assault; (4) a typographical error in the jury instructions for the kidnapping charges led to juror confusion and resulted in an unfair trial; and (5) his counsel's failure to argue that the home he burglarized was his own constituted ineffective assistance of counsel. *Id.* at 16-76.

The state trial court summarily denied Mr. Parvilus' habeas petition and he promptly petitioned the state supreme court for a writ of certiorari. *Id.* at 1-2, 79. In his petition for a writ, Mr. Parvilus included all of his state trial court habeas arguments, except for the contention that a typographical error in the jury instructions for the kidnapping charges resulted in an unfair trial. *See* (Doc. 13-6 at 3-13). On February 8,

2017, the state supreme court denied his petition for a writ of certiorari. (Doc. 13-6 at 79). Mr. Parvilus was represented by counsel throughout his state court proceedings, including both the state trial court petition for habeas corpus and the petition for a writ of certiorari to the state supreme court. (Doc. 13 at 5).

Following the state supreme court's denial of his petition for a writ of certiorari, Mr. Parvilus filed this 28 U.S.C. § 2254 petition ("Petition" or "§ 2254 petition"). (Doc. 1 at 1). Mr. Parvilus now appears before this Court *pro se. Id.*

### III.    Mr. Parvilus' Section 2254 Claims

Mr. Parvilus raises the following seven grounds for relief in his § 2254 petition: (1) his kidnapping convictions are invalid because the restraint of his victims was insufficient to satisfy the statutory language; (2) the state trial court failed to provide the jury with the proper "use instruction" preceding the special verdict questions; (3) he was unduly prejudiced when the jurors saw him arrive at the courthouse in the government's custody; (4) trial counsel was ineffective for failing to argue for an explanatory jury instruction on sufficient provocation; (5) trial counsel was ineffective for failing to argue the home he allegedly burglarized was his own; (6) trial counsel was ineffective for failing to argue the residence he allegedly burglarized was his "spousal home;" and (7) a typographical error in the jury instructions for the kidnapping charges led to juror confusion and resulted in an unfair trial. (Doc. 1); (Doc. 14).

In response, Respondents contend Mr. Parvilus has not exhausted all of his claims, specifically grounds one, five, and seven. (Doc. 13 at 1-12). As such, Respondents argue that Mr. Parvilus' petition is "mixed" for purposes of federal habeas review. *Id.* at 12. Nevertheless, Respondents urge the Court to ignore the exhaustion

requirement in this case and deny the petition for lack of merit, an option recognized by the United States Supreme Court. *See id.* (citing *Granberry v. Greer*, 481 U.S. 129, 134-135 (1987)).

As a *pro se* litigant, Mr. Parvilus' pleadings are to be "liberally construed." *Sines v. Wilner*, 609 F.3d 1070, 1074 (10th Cir. 2010) (citation omitted). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby, Connor, Maddux, & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted). Indeed, *pro se* litigants are held to "less stringent standards" than those expected of lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, a *pro se* litigant's pleadings are to be judged by the same legal standards that apply to all litigants, and he must still abide by the applicable rules of court. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). In addition, a court cannot "assume the role of advocate" for the litigant, nor is it required to fashion his arguments for him. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citations omitted).

## IV.    Exhaustion of State Court Remedies

Before discussing the merits of Mr. Parvilus' claims, the Court must address the threshold issue of exhaustion. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). To maintain our dual system of government, an individual must first seek relief from the state courts before presenting his claims to the federal court for review. *Id.* at 518-19. Based on principles of comity, federal courts should defer action on a state court case

until the state court has a full opportunity to review all claims of constitutional error. *Id.* In respecting the state's sovereignty and allowing federal claims to be fully exhausted at the state level, the federal court is provided a more complete and thorough record upon review. *Id.* at 519.

An individual may exhaust his claims at the state-court level by either presenting his arguments on direct appeal or through collateral review. *See e.g.*, *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[W]e conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *see also Banks v. Dretke*, 540 U.S. 668, 690 (2004) (finding the defendant satisfied the exhaustion requirement by presenting his argument in his state-court application for a writ of habeas corpus). Additionally, an individual must plead his claim with specificity, to adequately apprise the state courts of the presence of his federal claim. *Baldwin v. Reese*, 541 U.S. 27, 31-33 (2004). Indeed, both the allegations and the supporting evidence must "provide the state courts 'a fair opportunity' to apply controlling legal principles to the facts bearing upon [the] constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

In the present matter, the parties dispute whether Mr. Parvilus has exhausted grounds one, five, and seven. First, in ground one, Mr. Parvilus alleges that his kidnapping convictions were supported by insufficient evidence, violating his Fifth, Sixth, and Fourteenth Amendment rights. (Doc. 1 at 5); (Doc. 14 at 2-3). Specifically, Mr. Parvilus argues he did not restrain Mrs. Parvilus and Mr. Smith with the intent necessary to satisfy the statutory language. *Id.* Respondents contend that while Mr.

Parvilus presented this argument in his direct appeal regarding Mr. Smith, he did not address the claim as to Mrs. Parvilus. (Doc. 13 at 7 n.4).

Mr. Parvilus argued in both his direct appeal to the court of appeals and in his petition for a writ of certiorari to the state supreme court that there was insufficient evidence to conclude Mr. Smith had not been freed in a safe place. (Doc. 13-1 at 75-78); (Doc. 13-3 at 7-8). In addition, Mr. Parvilus argued in both his state habeas petition and petition for a writ of certiorari to the state supreme court that there was insufficient evidence to prove that he kidnapped both Mr. Smith *and* Mrs. Parvilus. (Doc. 13-6 at 22) (habeas petition to state trial court) ("Neither of the first-degree kidnapping convictions are valid insofar as the restraint of *each* victim was part of the commission of another offense.") (emphasis added); *see also id.* at 10 (petition for a writ of certiorari to state supreme court) ("Petitioner Parvilus's convictions for first-degree kidnapping cannot be squared with New Mexico law on kidnapping").

Notably, Mr. Parvilus has now framed his claim as one involving the restraint of "his wife and her lover with the intent to inflict death, physical injury, or sexual offenses." (Doc. 1 at 5). While this language is not identical to that employed by counsel in his state petitions, the Court finds that Mr. Parvilus is proffering substantially the same argument. *See e.g.*, *Ellis v. Raemisch*, 872 F.3d 1064, 1091 (10th Cir. 2017) ("[A] federal court may grant habeas relief only with respect to federal claims that state prisoners have appropriately exhausted by adequately presenting the *substance* of the claims to the appropriate state court for review.") (emphasis added). Importantly, in both his current Petition and his state proceedings, Mr. Parvilus challenges the restraint necessary to be convicted of kidnapping. Mr. Parvilus buttresses this conclusion by

arguing in his Reply that "[t]here was no evidence presented to establish that Petitioner actually or constructively 'restrained' [Mrs. Parvilus]" and "Smith was subjected to restraint for a short period of time and then released unharmed." (Doc. 14 at 2). As a *pro se* litigant, Mr. Parvilus should be granted liberal construction of his arguments, and his "confusion of various legal theories" should be carefully reviewed to ensure that he receives the same right to be heard as all litigants – whether represented by counsel or not. *See Garrett*, 425 F.3d at 840.

In addition, Respondents are correct that Mr. Parvilus "made no mention in his brief-in-chief [on direct appeal] of his first-degree kidnapping conviction as to [Mrs. Parvilus]." (Doc. 13 at 7 n.4). However, to exhaust state court remedies, Mr. Parvilus did not need to present an identical argument in both his direct appeal and on collateral review. *See Brown v. Allen*, 344 U.S. 443, 447 (1953) (stating it "is not necessary . . . for the prisoner to ask the state for collateral relief, based on the same evidence and issues already decided by direct review"). Rather, the exhaustion requirement is satisfied if the federal issue has been presented to the highest court of the state, either by direct review or in a postconviction attack. *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1535-36 (10th Cir. 2002). Thus, Mr. Parvilus' claim regarding insufficient evidence to support his first-degree kidnapping convictions has been exhausted at the state-court level: the argument regarding Mr. Smith having been exhausted on both direct appeal and collateral attack, and the argument regarding Mrs. Parvilus upon collateral attack.

Next, Respondents contend Mr. Parvilus did not exhaust ground five, regarding his conviction for aggravated burglary. (Doc. 13 at 8-9). In ground five, Mr. Parvilus argues it is "legally impossible" for him to be guilty of aggravated burglary because the

home he allegedly burglarized was his own. (Doc. 1 at 17-18). In response, Respondents allege this claim is unexhausted because Mr. Parvilus did not argue he is "actually and factually innocent of aggravated burglary" in his state-court proceedings. (Doc. 13 at 8). In his Reply, Mr. Parvilus clarifies this argument by citing to his state habeas petition. (Doc. 14 at 5). Specifically, Mr. Parvilus directs the Court to his assertion that his state trial counsel was ineffective for failing to argue that the home he allegedly burglarized was his own. (Doc. 13-6 at 63-64).

In considering Mr. Parvilus' Reply, coupled with the Court's duty to excuse a *pro se* litigant's "failure to cite proper legal authority" and "unfamiliarity with pleading requirements," the Court finds Mr. Parvilus has raised a claim that his counsel was ineffective for failing to argue that the home he allegedly burglarized was his own. *See Garrett*, 425 F.3d at 840; *Sines*, 609 F.3d at 1074. Because Mr. Parvilus alleges ineffective assistance of counsel, Respondents' contention that he did not exhaust his claim of "actual and factual innocence" is no longer relevant. *See* (Doc. 13 at 25-26). Rather, ground five has been properly exhausted at the state-court level because Mr. Parvilus presented this ineffective assistance of counsel claim in his state habeas petition. (Doc. 13-6 at 63-64) (presenting this argument in his state trial court habeas petition); (Doc. 13-6 at 11-12) (presenting this argument in his state supreme court petition for writ of certiorari).

Finally, Respondents argue Mr. Parvilus has not exhausted ground seven, his argument that a typographical error in the jury instructions violated his right to a fair trial under the Sixth and Fourteenth Amendments. (Doc. 13 at 9). In his Reply, Mr. Parvilus

does not address the merits of Respondents' argument, simply stating: "Petitioner disagrees that the issue is unexhausted or meritless." (Doc. 14 at 6).

Mr. Parvilus raised this argument in his state habeas petition, but he abandoned the argument in his petition for a writ of certiorari to the state supreme court. (Doc. 13-6 at 3-13); (Doc. 13-6 at 62-63). Thus, for purposes of federal habeas relief, Mr. Parvilus' argument has not proceeded through a "complete round" of appellate review, nor has it been considered by the highest court of the state. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). As such, the Court finds this argument has not been exhausted.

### V.    Procedural Default

Mr. Parvilus has therefore filed a mixed petition, with both exhausted claims (claims one through six), and an unexhausted claim (claim seven). When an individual has not exhausted his claims in state court, the federal court may either: (1) dismiss the petition in its entirety without prejudice, allowing the litigant to exhaust state-court remedies and refile his federal habeas petition at a later date; (2) stay the petition and hold it in abeyance while the litigant returns to state court to exhaust his claims; (3) allow the litigant to dismiss the unexhausted claims and proceed with only the exhausted claims; or (4) ignore the exhaustion requirement and deny the petition on the merits if none of the litigant's claims have any merit. *Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (citing *Rhines v. Weber*, 544 U.S. 269, 277 (2005)). When a litigant has failed to exhaust his claims, a court will generally choose the option of dismissing the petition without prejudice to allow the litigant to exhaust state-court remedies. *Bland v. Simmons*, 459 F.3d 999, 1012 (10th Cir. 2006) (citation omitted). However, before dismissing the petition, the court should consider whether, upon

dismissal, the litigant would be able to raise his claims in the state court. *Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997).

If the court where the litigant must present his claims to exhaust his state-court remedies would now find those claims procedurally barred, there is a "procedural default for the purposes of federal habeas review." *Bland*, 459 F.3d at 1012. Put simply, if state-court remedies are no longer available to the litigant because he failed to comply with state rules or procedure, those remedies are deemed "technically exhausted." *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). When a litigant's claims are procedurally barred at the state-court level, and thus technically exhausted for purposes of federal habeas review, he is generally barred from asserting the claim in his federal proceedings. *Id.*

However, a court may ignore the issue of procedural default when it determines that the claim "may be more easily and succinctly affirmed on the merits." *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000). Specifically, a court may decline to address the procedural bar issue if the claim would otherwise fail on the merits. *U.S. v. Wright*, 43 F.3d 491, 496 (10th Cir. 1994). Here, as set forth below, *see infra § VI. Analysis*, it would be at odds with judicial efficiency to send this case back to the state courts, leading to further possible briefing and litigation on this issue, only to have the case refiled in this Court and then denied on the merits. As such, the Court will proceed to consider this claim on the merits. *See Romero*, 215 F.3d at 1111 (declining to address complex procedural bar issue and proceeding to consider claim on the merits).

## VI.    Analysis

Under 28 U.S.C. § 2254, a person in state custody may petition a federal court for relief on the ground that he is in custody in violation of the United States Constitution or laws. § 2254(a). A petition under § 2254 may not be granted unless the state court judgment: (1) resulted in a decision contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented. §§ 2254(d)(1)-(2). Factual findings are presumed correct and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. § 2254(e)(1).

A state court decision is "contrary to" clearly established law if it: (1) "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or; (2) "confronts a set of facts that are materially indistinguishable" from a Supreme Court decision and "nevertheless arrives at a result different from" the Supreme Court decision. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Similarly, a state court decision constitutes an "unreasonable application" of federal law when a state "unreasonably applies" Supreme Court precedent "to the facts of a prisoner's case." *Id.* at 409. The state court decision must be more than incorrect or erroneous. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and quotation omitted). Rather, the application "must be 'objectively unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409). This imposes a highly deferential standard of review, and state court decisions must be given the benefit of the doubt. *Id.*

*a. Claim one: Insufficient evidence to sustain kidnapping convictions*

Mr. Parvilus first argues his kidnapping convictions are supported by insufficient evidence because the State did not prove he harbored the requisite statutory intent to be found guilty beyond a reasonable doubt. (Doc. 1 at 5). Respondents counter that the State presented ample evidence to prove each element of first-degree kidnapping, including evidence that Mr. Parvilus intentionally transported or confined his two victims. (Doc. 13 at 16-17).

A litigant is entitled to federal habeas relief on a sufficiency of the evidence claim if no rational trier of fact could have found him guilty beyond a reasonable doubt, based on the evidence presented at trial. 28 U.S.C. § 2254(d)(2). In reviewing a claim for sufficiency of the evidence, a court must take both direct and circumstantial evidence, together with reasonable inferences drawn in favor of the prosecution, and determine whether a reasonable jury could find him guilty. *U.S. v. Bush*, 405 F.3d 909, 919 (10th Cir. 2005).

It is within the province of the jury, as the fact-finder, to resolve conflicting testimony and make credibility determinations. *Id.*; *see also U.S. v. Butler*, 966 F.2d 559, 563 (10th Cir. 1992). As such, the only question for a federal court on review is whether the criminal defendant's conviction was "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 655-56. The evidence must be "blatantly contradicted by the record," so that no reasonable jury could believe it. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The reviewing court cannot "second-guess" the jury's credibility determinations or "reassess the jury's conclusions about the weight of the evidence presented." *U.S. v. Johnson*, 57 F.3d 968, 971 (10th Cir. 1995). Rather,

the court's review is "sharply limited" and it must accept the jury's resolution of the evidence as long as it is "within the bounds of reason." *Barger v. Oklahoma*, 238 Fed.Appx. 343, 345-46 (10th Cir. 2007) (unpublished).

In its review, the federal court "must look to state law for the substantive elements of the criminal offense." *Coleman*, 566 U.S. at 655. In New Mexico, a defendant may be convicted of first-degree kidnapping upon proof of: (1) an unlawful taking, restraint, transport, or confinement of a person (whether by force, intimidation, or deception); with the intent to (2) inflict death or physical injury on the victim. *See* N.M.S.A. § 30-4-1.

Here, Mr. Parvilus alleges that he did not restrain, transport, or move Mrs. Parvilus – thereby arguing that the State did not satisfy its burden of proof regarding the first element delineated above. (Doc. 14 at 2). In response, Respondents direct the Court to testimonial evidence presented at trial that suggests Mr. Parvilus restrained, transported, and/or moved his victim. (Doc. 13 at 17).

Mrs. Parvilus testified at trial that Mr. Parvilus forced her to accompany him to the Hampton Inn, she never felt free to leave, and she complied with his demands because he had a gun. (Doc. 13 at 18-19). Mrs. Parvilus further testified that her husband led her around the house at gunpoint and showed her the shredded clothing of Mr. Smith. (Doc. 13 at 17-18). Mr. Parvilus, however, rebutted her testimony at trial, alleging that Mrs. Parvilus wanted to accompany him to the Hampton Inn and as they drove, she held his hand. (Doc. 13-3 at 4).

When there are two conflicting stories, it is the jury's job to resolve the conflict. *Butler*, 966 F.2d at 563. The jury heard all of the evidence presented at trial, including

16

Mr. and Mrs. Parvilus' testimony, and concluded that Mr. Parvilus unlawfully restrained, transported, or confined his wife, whether by force or intimidation. There is considerable evidence in the record to support the jury's conclusion, including the victim's own testimony and the injury she sustained from being struck with Mr. Parvilus' gun. (Doc. 13 at 17). It is therefore not outside the "bounds of reason" that a rational jury could conclude that Mrs. Parvilus did not willingly accompany her husband to the Hampton Inn or was otherwise confined in her own home. *See Barger*, 238 Fed.Appx. at 345.

Next, Mr. Parvilus argues there is insufficient evidence to establish that he restrained Mrs. Parvilus with the intent to inflict physical injury or death – thereby arguing that the State did not satisfy its burden of proof regarding the second element delineated above. (Doc. 14 at 2). In addition, Mr. Parvilus contends that any injury Mrs. Parvilus suffered occurred before she was restrained, arguing that the injury and the restraint were too temporally attenuated to satisfy the intent requirement. (Doc. 1 at 5). However, Respondents contend that Mr. Parvilus' "threatening words and actions, including taunting [Mrs. Parvilus] with Mr. Smith's shredded clothes," evidence an intent to cause physical injury. (Doc. 13 at 17-18).

In weighing whether the necessary criminal intent exists to satisfy a kidnapping conviction, the jury may infer from evidence of acts committed at a later point that the intent existed at the time the victim was first restrained. *State v. Allen*, 994 P.2d 728, 753 (N.M. 1999). Rarely is a defendant's intent able to be proven by direct evidence, it is more likely to be established by circumstantial evidence. *Id.* Further, it is the intent to cause injury, not proof of an actual injury, that is required for a kidnapping conviction. *State v. Sotelo*, 296 P.3d 1232, 1238 (N.M. Ct. App. 2012).

Here, a jury could surmise that because Mr. Parvilus had just killed Mr. Smith, shown Mrs. Parvilus his shredded clothing, and was armed with at least two weapons, he intended to cause her physical injury. This conclusion is further supported by Mrs. Parvilus' testimony at trial that she did not feel free to leave because Mr. Parvilus aimed a gun at her head and made threatening remarks. (Doc. 13 at 17-18). As such, the jury's conclusion that Mr. Parvilus harbored the intent necessary to be convicted of first-degree kidnapping is not "blatantly contradicted by the record." *See Scott*, 550 U.S. at 380.

Next, Mr. Parvilus argues his kidnapping conviction concerning Mr. Smith is invalid because any injury Mr. Smith suffered came after he was restrained. (Doc. 1 at 5). Respondents counter that while the injury may have occurred after Mr. Smith's original restraint at Mrs. Parvilus' home, the jury could reasonably infer that Mr. Parvilus intended to inflict death or cause physical injury based on his actions. (Doc. 13 at 17). In addition, Mr. Parvilus contends there is no evidence that he transported Mr. Smith to the Hampton Inn with the intent to kill or injure him. (Doc. 14 at 2-3). In response, Respondents argue the jury was free to reject Mr. Parvilus' testimony that Mr. Smith willingly accompanied him to the hotel and the jury's verdict was therefore justified. (Doc. 13 at 17).

At trial, the State's version of events painted this incident as Mr. Smith being forced to accompany Mr. Parvilus to the Hampton Inn after being threatened and humiliated at Mrs. Parvilus' apartment. (Doc. 13 at 17). A jury could therefore reasonably infer that Mr. Parvilus harbored the intent to kill Mr. Smith before he transported him to the Hampton Inn – for example, when he purchased a gun, climbed

through his wife's apartment window, and duct-taped him. (Doc. 13-1 at 64). The jury is permitted to use common sense in evaluating the evidence and can make inferences from proven facts. *See U.S. v. McBride*, 656 Fed.Appx. 416, 422 (10th Cir. 2016) (unpublished). Accordingly, the jury's verdict is not "insupportable as to fall below the threshold of bare rationality." *See Coleman*, 566 U.S. at 655-56. As such, the Court finds there is sufficient evidence to support the jury's conviction of both counts of first-degree kidnapping and recommends this claim be denied.

### b. *Claims two and seven: Jury instruction errors*

Next, Mr. Parvilus argues the trial court should have provided the jury with a "use instruction" preceding the special verdict questions for kidnapping. (Doc. 1 at 7). Respondents claim, however, that this is an issue of state law, not cognizable in federal habeas proceedings. (Doc. 13 at 18-20). In addition, Respondents argue the state court of appeals has already considered and properly rejected Mr. Parvilus' claim. *Id.*

Similarly, in ground seven, Mr. Parvilus contends a typographical error in the jury instructions for kidnapping led to juror "confusion and misdirection," resulting in an unfair trial in violation of his right to due process of law. (Doc. 1 at 20-21); (Doc. 14 at 6). In response, Respondents argue the typographical error relates to the crime of false imprisonment, for which Mr. Parvilus was not convicted. (Doc. 13 at 27-28). Further, Respondents contend there is no evidence of juror confusion. *Id.* Because both claim two and claim seven allege instructional errors related to Mr. Parvilus' kidnapping convictions, they will be addressed together.

When a petitioner asserts instructional error on collateral review, "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the

entire trial that the resulting conviction violates due process.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Satisfying this standard is a "heavy burden," and the federal court may only review jury instructions in a state criminal trial if they are "so fundamentally unfair as to deprive petitioner of a fair trial." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997). This standard requires not merely that the instruction is "undesirable, erroneous, or even universally condemned," but that it violated the petitioner's constitutional rights guaranteed to him by the Fourteenth Amendment. *Cupp*, 414 U.S. at 146. Notably, when a litigant argues that an instruction was erroneously omitted, it is "less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 156.

First, Mr. Parvilus contends the jury should have been provided additional explanatory instructions preceding the special verdict questions for kidnapping. (Doc. 1 at 7). On direct appeal, the state court of appeals concluded that the lack of special verdict instructions did not constitute plain error requiring reversal. (Doc. 13-2 at 84-85). Mr. Parvilus has not suggested how the state court of appeals' ruling was "contrary to, or involved an unreasonable application of, clearly established *federal* law." 28 U.S.C. § 2254(d)(1) (emphasis added).

In addition, Mr. Parvilus does not direct the Court to any evidence that the omission of this instruction resulted in a "fundamentally unfair" trial, establishing a constitutional violation. *See Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir. 1979). Nor has Mr. Parvilus presented any argument that the jury was confused or actually misdirected by the lack of instruction. As such, the Court finds that the omission of

special verdict instructions did not result in a deprivation of Mr. Parvilus' due process right to a fair trial and recommends this claim be denied.

Next, in claim seven, Mr. Parvilus argues a typographical error in jury instruction number 40 resulted in an unfair trial. (Doc. 1 at). Pursuant to jury instruction 40, first, the jurors are directed to consider whether Mr. Parvilus is guilty of kidnapping. (Doc. 13 at 26-27). Next, at step two, if the jurors find Mr. Parvilus is not guilty of kidnapping, they are instructed to consider whether he is guilty of false imprisonment. *Id.* Finally, at step three, if the jury finds Mr. Parvilus is not guilty of both kidnapping and *assault* (which should have read "false imprisonment"), then the jurors are instructed to find him not guilty as to that count. *Id.*

Here, the jury's inquiry ceased at step one because when asked if they found Mr. Parvilus guilty of kidnapping, they indicated yes. By finding Mr. Parvilus guilty at step one, the jury never proceeded to step three, where the typographical error was located. The instructions support this conclusion, by directing the jury to stop at step one if they find Mr. Parvilus guilty of kidnapping: "If you find him guilty of that crime, then that is the only form of verdict which is to be signed as to that count." (Doc. 13 at 27).

Mr. Parvilus is correct that this instruction is erroneous and may even be undesirable, but the law plainly requires more than a mere typographical error to have the instruction rendered unconstitutional. *Cupp*, 414 U.S. at 146. As such, any "tangential undercutting […] as a theoretical matter" that this instructional error may have caused does not rise to the level of "constitutional dimension." *See id.* at 149. In addition, because the typographical error was not related to Mr. Parvilus' kidnapping conviction, it cannot be deemed to have "infected the entire trial" to such an extent that

it jeopardized Mr. Parvilus' constitutional rights. *See Henderson*, 431 U.S. at 154. Therefore, the Court finds that the typographical error did not result in a deprivation of Mr. Parvilus' due process right to a fair trial and recommends this claim be denied.

### c. *Claim three: Juror extraneous information*

Mr. Parvilus next argues he was denied a fair trial because he was driven to the courthouse in the backseat of a marked government vehicle and was exposed to four of his state trial court jurors. (Doc. 1 at 8). Respondents contend this claim is meritless because the conduct did not take place in the courtroom, there is no evidence that the exposure was intentional, and the State had an essential interest in transporting Mr. Parvilus to the courthouse in a marked government vehicle. (Doc. 13 at 20-21).

When a juror is exposed to "extraneous information," the trial court is tasked with ascertaining whether the information was prejudicial to the criminal defendant. *U.S. v. Simpson*, 950 F.2d 1519, 1521 (10th Cir. 1991). This is an objective inquiry and requires the court to consider whether the extraneous information reasonably could have affected the jury's verdict. *Id.* at 1522. The Tenth Circuit has recognized that "fleeting glances" of possibly prejudicial information that occurs "outside of the courtroom" does not require a new trial absent proof of actual prejudice. *See, e.g.*, *id.*; *U.S. v. Johnson*, 911 F.2d 1394, 1397 (10th Cir. 1990) (holding that an inadvertent view of the defendant in handcuffs did not warrant a mistrial).

Here, the state trial court denied Mr. Parvilus' motion for a mistrial. (Doc. 13-2 at 85). Specifically, the state trial court held it was unclear "whether the juror[s] actually saw the defendant in handcuffs and whether the exposure was 'anything more than inadvertent or insignificant.'" *Id.* at 85-86. The state trial court's decision is consistent

with federal precedent and cannot be deemed "contrary to clearly established federal law," as required by § 2254(d)(1). Thus, the Court recommends that Mr. Parvilus' third claim for relief be denied.

### d. *Claims four, five, and six: Ineffective assistance of counsel*

In grounds four, five, and six, Mr. Parvilus argues ineffective assistance of counsel for trial counsel's failure to argue: (1) that an explanatory jury instruction should have been provided on sufficient provocation; (2) the home he allegedly burglarized was his own; and (3) the home he allegedly burglarized was his "spousal home." (Doc. 1 at 16-20). Respondents counter that Mr. Parvilus' trial counsel did argue for a sufficient provocation instruction, and such an instruction was given. (Doc. 13 at 23-26). Further, Respondents maintain that trial counsel could not argue the home Mr. Parvilus burglarized was his own home, or a shared "spousal home," because such an argument was directly at odds with counsel's strategy at trial. *Id.*

To establish ineffective assistance of counsel, a litigant must satisfy a two-part test. First, he must show that counsel's performance was deficient because it fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must show that counsel's deficient performance prejudiced him. *Id.* at 687. To demonstrate that counsel was ineffective, the litigant must satisfy both prongs outlined in *Strickland. See id.* at 687. The Court may address each of these components in any order and need not address both if the litigant makes an insufficient showing on one. *United States v. Dowell*, 388 Fed. Appx. 781, 783 (10th Cir. July 21, 2010) (unpublished) (citing *Strickland*, 466 U.S. at 697).

In demonstrating that counsel's performance was deficient under the first prong of the *Strickland* test, "judicial scrutiny of counsel's performance must be highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The reasonableness of counsel's performance must be evaluated considering all the circumstances. *Id.* at 688. In addition, to establish prejudice under the second prong of the *Strickland* test, a petitioner must show "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"Surmounting *Strickland's* high bar is never easy." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citation omitted). However, when a *Strickland* challenge is coupled with the "highly deferential" standards of § 2254, the litigant's burden of proving unreasonableness becomes even more difficult. *Id.* The question becomes not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 105.

First, Mr. Parvilus insists that trial counsel should have argued for the jury to be given an explanatory instruction on sufficient provocation. (Doc. 1 at 15-16). Notably, Mr. Parvilus' counsel did argue that the jury should be instructed on sufficient provocation, and the state trial court provided the jury a "pattern voluntary manslaughter instruction […] and a standard definition of 'sufficient provocation.'" (Doc. 13-6 at 25).

Counsel's decision to advocate for a sufficient provocation instruction but not argue for "additional explanatory language" was reasonable. *See id.* Indeed, a sufficient provocation defense cut against Mr. Parvilus' principal theory of the case and his own testimony proffered at trial: he killed Mr. Smith in self-defense. In addition, Mr. Parvilus

has not demonstrated either objective unreasonableness nor prejudice as a result of counsel's decision to not cite "authorities from other jurisdictions" in its argument for an explanatory instruction. *See id.* Thus, the Court finds that counsel's decision to not argue for additional explanatory language was reasonable.

Next, Mr. Parvilus contends that counsel should have argued the home he burglarized was his own or was his and Mrs. Parvilus' "spousal home." (Doc. 1 at 16-20). Instead, Mr. Parvilus' counsel argued at trial that the apartment belonged to Mrs. Parvilus individually. (Doc. 1 at 18-19). The facts illustrate that a contrary argument may have been less convincing, since Mr. Parvilus entered the home through a window after buying a box-cutter and a screwdriver to gain entry. (Doc. 13-1 at 64). These facts make it reasonable for counsel to present the home as belonging to Mrs. Parvilus, rather than lose credibility in front of the jury by arguing Mr. Parvilus entered his own home through a window.

This theory also supported counsel's argument after trial and on appeal that Mr. Parvilus' conviction for burglary was legally impossible under the domestic-affairs statute, § 40-3-3. Had Mr. Parvilus' counsel instead argued either that the apartment was his own home or his shared home with Mrs. Parvilus, it would have jeopardized the basis of the later JNOV motion. The reasonableness of this decision is supported by both the state trial court and the state court of appeals agreeing with counsel's argument and granting Mr. Parvilus relief on his aggravated burglary conviction. *See* (Doc. 13-2 at 72-74). As such, counsel's tactical and strategic decisions were reasonable and will not be second-guessed by the Court. Therefore, the Court recommends Mr. Parvilus' fourth, fifth, and sixth grounds for relief be denied.

### VII.    Conclusion

For the foregoing reasons, the Court finds that Mr. Parvilus has not established

that the state courts' decisions in this case were contrary to or unreasonable

applications of clearly established federal law, or that they were based on unreasonable

determinations of fact in light of the evidence presented. The Court therefore

**RECOMMENDS** Mr. Parvilus' *Petition under 28 U.S.C. § 2254 for Writ of Habeas*

*Corpus By a Person in State Custody*, (Doc. 1), be **DENIED**; and that this case be

**DISMISSED WITH PREJUDICE.**

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE