**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

GERARD PARVILUS,

       Plaintiff/Petitioner,

v.                               No. CV 17-268 WJ/CG

RAYMOND SMITH, et al.,

       Defendants/Respondents.

**ORDER ADOPTING CHIEF MAGISTRATE JUDGE'S**
**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

      **THIS MATTER** is before the Court on Chief Magistrate Judge Carmen E. Garza's

*Proposed Findings and Recommended Disposition* (the "PFRD"), (Doc. 17), filed

December 12, 2018, and Petitioner Gerard Parvilus' *Objections to the Magistrate's*

*Proposed Findings and Recommended Disposition* (the "Objections"), (Doc. 19), filed

December 28, 2018. In the PFRD, the Chief Magistrate Judge recommended that Mr.

Parvilus' *Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in*

*State Custody* (the "Petition"), (Doc. 1), be denied. (Doc. 17 at 26).

      The parties were informed that objections to the Chief Magistrate Judge's opinion

were due within fourteen days of service of the PFRD. *Id.* Mr. Parvilus timely objected to

the PFRD on December 28, 2018. (Doc. 19). Respondent neither objected to the PFRD

nor responded to Mr. Parvilus' Objections, and the fourteen-day deadline has now

passed. *See* Rule 12 of the Rules Governing Section 2254 Proceedings in the United

States District Courts; Fed. R. Civ. P. 72(B)(2). Following a *de novo* review of the

Petition, PFRD, and Objections, the Court will overrule the Objections, adopt the PFRD,

deny the Petition, and dismiss this case with prejudice.

## I.     Background

After learning of his wife's infidelity and illegitimate pregnancy, Mr. Parvilus left his overseas duty station with the United States Air Force and returned to Alamogordo, New Mexico, where his wife and child resided. (Doc. 13-1 at 61-64). Shortly after his return to New Mexico, Mr. Parvilus entered his wife's apartment through an unlocked window. *Id.* at 64-65. Once inside, Mr. Parvilus encountered Pierre Smith, his wife's companion. *Id.* Upon encountering Mr. Smith, Mr. Parvilus duct-taped him to a chair, questioned him about his relationship with Mrs. Parvilus, and threatened him with a gun. *Id.*

After releasing Mr. Smith unharmed, the two men traveled to Mr. Parvilus' hotel room at the Hampton Inn. *Id.* at 65. Once inside the room, Mr. Parvilus stabbed Mr. Smith to death. *Id.* at 65-68. The parties dispute both the voluntariness of Mr. Smith's actions in accompanying Mr. Parvilus to the Hampton Inn and the circumstances surrounding his death. *Id.*

After killing Mr. Smith and leaving his body on the hotel room floor, Mr. Parvilus returned to his wife's apartment to await her arrival. *Id.* Upon her return, Mr. Parvilus began threatening to kill himself and questioned Mrs. Parvilus about the details of her affair with Mr. Smith. *Id.* at 67-68. Mr. and Mrs. Parvilus disagree about whether Mr. Parvilus then intentionally or accidentally struck Mrs. Parvilus with his gun and whether Mrs. Parvilus proceeded to voluntarily or unwillingly accompany her husband to the Hampton Inn. *Id.* at 68.

Nonetheless, when Mr. and Mrs. Parvilus arrived at the hotel room, Mrs. Parvilus saw Mr. Smith's body lying on the floor. *Id.* At the urging of Mrs. Parvilus, Mr. Parvilus

drove to the New Mexico state police station and confessed to killing Mr. Smith. *Id.* at 68-69.

On November 3, 2009, a jury found Mr. Parvilus guilty of: (1) second degree murder; (2) two counts of first degree kidnapping; (3) aggravated burglary with a deadly weapon; (4) aggravated assault with a deadly weapon on a household member; and (5) interference with communications. (Doc. 13-1 at 1).

Following trial, Mr. Parvilus' counsel moved for a judgment notwithstanding the verdict ("JNOV"), seeking to dismiss the aggravated burglary conviction. *Id.* at 2. The state trial court granted defense counsel's motion, explaining that N.M.S.A. § 40-3-3, a New Mexico domestic-affairs statute, made burglary involving a husband and wife a legal impossibility. *Id.* In response, the State of New Mexico (the "State") appealed the state trial court's decision, arguing the domestic-affairs statute did not afford a husband immunity from a conviction of burglary against a spouse. *Id.* at 12. Mr. Parvilus also appealed, challenging all of his convictions on various grounds. *Id.* at 8.

The New Mexico Court of Appeals ("the court of appeals") affirmed the state trial court's opinion, dismissing both Mr. Parvilus' and the State's appeals. (Doc. 13-2 at 73-87). Following the court of appeals' decision, the State and Mr. Parvilus each petitioned for a writ of certiorari to the Supreme Court of the State of New Mexico (the "state supreme court"), requesting review of the lower courts' decisions. (Doc. 13-3 at 1, 42-43). The state supreme court denied Mr. Parvilus' petition for certiorari, thereby affirming his convictions. (Doc. 13-3 at 42). The state supreme court granted the State's petition for certiorari, finding that the domestic-affairs statute does not protect a spouse against a conviction of aggravated burglary when the crime involves a married couple.

(Doc. 13-2 at 86-87). Therefore, the state supreme court reversed the state court of appeals opinion and remanded the case for Mr. Parvilus to be resentenced. *Id.* On remand, Mr. Parvilus was resentenced to 43.5 years in the custody of the New Mexico Department of Corrections. (Doc. 13-1 at 4-6).

On May 16, 2016, Mr. Parvilus filed a petition for a writ of habeas corpus in the state trial court, asserting: (1) the jury should have been instructed on sufficient provocation, to reduce his homicide charge to voluntary manslaughter; (2) his trial counsel was ineffective for failing to argue for an explanatory instruction on sufficient provocation; (3) he did not restrain his victims beyond that needed to facilitate the commission of aggravated assault; (4) he experienced an unfair trial because of an error in the jury instructions regarding his kidnapping charges; and (5) his trial counsel was ineffective for failing to argue that the home he allegedly burglarized was his own. (Doc. 13-6 at 16-76).

The state trial court summarily dismissed the habeas petition and Mr. Parvilus petitioned the state supreme court for a writ of certiorari. *Id.* at 1-2, 79. In his petition to the state supreme court, Mr. Parvilus presented all of his state trial court habeas arguments, with the exception of his argument that he was not afforded a fair trial because of an error in the jury instructions. *See* (Doc. 13-6 at 3-13). On February 8, 2017, the state supreme court denied his petition for a writ of certiorari. (Doc. 13-6 at 79). Ten days later, Mr. Parvilus filed the instant Petition. (Doc. 1 at 1).

Mr. Parvilus now raises seven grounds for relief before this Court: (1) there is insufficient evidence to support his kidnapping convictions, in violation of his Fifth, Sixth, and Fourteenth Amendment rights; (2) the jury was presented with incomplete

4

instructions, in violation of his right to due process; (3) he was deprived of a full and fair trial when jurors witnessed him in the custody of the government outside the courthouse; (4) he suffered ineffective assistance of counsel because trial counsel failed to argue for an explanatory instruction on sufficient provocation; (5) he is "actually and factually innocent" of the aggravated burglary charge; (6) he suffered ineffective assistance of counsel because trial counsel failed to argue that the home he allegedly burglarized was his shared spousal home; and (7) the jury was improperly instructed regarding the kidnapping charges, in violation of his Sixth and Fourteenth Amendment rights. (Doc. 1); (Doc. 14). Respondent contends that grounds one, five, and seven have not been exhausted. (Doc. 13 at 1-12). Nevertheless, Respondent urges the Court to evaluate the claims and deny the Petition for lack of merit. *Id.*

In the PFRD, the Chief Magistrate Judge considered Mr. Parvilus' claims, explaining that under 28 U.S.C. § 2254 Mr. Parvilus must show that the state courts' decisions were contrary to, or an unreasonable application of, clearly established federal law or that there were unreasonable determinations of fact. *See* 28 U.S.C. § 2254(d). The Chief Magistrate Judge found that Mr. Parvilus' kidnapping convictions were supported by sufficient evidence, (Doc. 17 at 15-19), any error in his jury instructions did not result in a deprivation of due process, *id.* at 19-22, and his trial counsel's conduct did not amount to ineffective assistance of counsel, *id.* at 23-25. Further, the Chief Magistrate Judge concluded that Mr. Parvilus was not unduly prejudiced or denied a fair trial when jurors saw him in the backseat of a government vehicle. *Id.* at 22. The Chief Magistrate Judge therefore recommended that Mr. Parvilus' Petition be denied. *Id.* at 26.

Mr. Parvilus has timely objected to the PFRD. (Doc. 19). He first objects to the Chief Magistrate Judge's finding that there is sufficient evidence to sustain his kidnapping convictions. (Doc. 19 at 2). Next, Mr. Parvilus objects to the Chief Magistrate Judge's conclusion that any error in his jury instructions did not result in a deprivation of due process. *Id.* at 6-10. Finally, Mr. Parvilus objects to the Chief Magistrate Judge's opinion that he did not suffer ineffective assistance of counsel when trial counsel failed to argue that his entry into the home was authorized. *Id.* at 10-16.

## II.     Analysis

When resolving objections to a magistrate judge's recommendation, the district judge must make a *de novo* determination regarding any part of the recommendation to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C). Filing objections that address the primary issues in the case "advances the interests that underlie the Magistrate's Act, including judicial efficiency." *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1059 (10th Cir. 1996). Objections must be timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *Id.* at 1060. Additionally, issues "raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).

### A.  <u>Insufficient Evidence to Sustain Kidnapping Convictions</u>

Mr. Parvilus first objects to the Chief Magistrate Judge's finding that his kidnapping convictions are supported by substantial evidence. (Doc. 19 at 2-6). In his Objections, Mr. Parvilus restates the argument that he presented in his Petition and

parses through the Chief Magistrate Judge's language to identify facts which bolster a contrary conclusion. *Id.* Specifically, Mr. Parvilus contends: (1) the transportation and subsequent injury/death of Mr. Smith were not intentionally linked for purposes of satisfying the definition of kidnapping; and (2) there is no evidence to establish that Mr. Parvilus transported Mrs. Parvilus to the hotel by force or intimidation. *Id.* These two arguments are identical to those addressed by the Chief Magistrate Judge in her PFRD.

The Chief Magistrate Judge explained that it is not within the purview of this Court to reweigh the evidence or second-guess the jury's determinations. *See U.S. v. Johnson*, 57 F.3d 968, 971 (10th Cir. 1995). Rather, it is the responsibility of the jury to resolve conflicts in testimony and make factual determinations. *U.S. v. Butler*, 966 F.2d 559, 563 (10th Cir. 1992). There is considerable deference afforded to the state courts' resolution of a sufficiency of the evidence question, and determinations of factual issues by state courts are presumed correct. *Torres v. Mullin*, 317 F.3d 1145, 1150 (10th Cir. 2003).

The crux of Mr. Parvilus' objection to this Court centers around his theory that there is no evidence that he harbored the requisite intent to injure his victims and transport them with force or intimidation. (Doc. 19 at 3-4) ("There was no evidence that Petitioner possessed the applicable *mens rea* requirement upon restraining Smith"). Understanding the contours of "intent" and its application in the context of the criminal law is an arduous task. Indeed, "the meaning of the word 'intent' in the criminal law has always been rather obscure." *Torres*, 317 F.3d at 1153. However, a jury may reach the conclusion that a defendant harbored the intent necessary to commit a crime even if the defendant denies having the intent. *Id.* Simply put, "a jury may disbelieve the

defendant." *Id.* Rarely will a defendant forthcomingly admit that he possessed the intent to commit the crime in question, but rather, intent is more often established by circumstantial evidence. *State v. Allen*, 994 P.2d 728, 753 (N.M. 1999).

The circumstantial evidence in Mr. Parvilus' case, as he notes, is susceptible to interpretation. For example, the State presented evidence that Mr. Parvilus intentionally hit his wife; Mrs. Parvilus' transportation to the Hampton Inn was involuntary; and Mr. Smith was taunted and humiliated before he was released from the restraints. *See* (Doc. 17 at 16). In contrast, Mr. Parvilus contends that the injury Mrs. Parvilus sustained was from an accident; Mr. Smith and Mrs. Parvilus voluntarily accompanied him to the Hampton Inn; and Mr. Smith was freed from the duct-tape when Mr. Parvilus realized he was "not an intruder." (Doc. 19 at 2-6). Mr. Parvilus posits that because the evidence may be viewed as consistent with a hypothesis of innocence, it is insufficient to support his kidnapping convictions. *See* (Doc. 19 at 2-6). However, both the Tenth Circuit Court of Appeals and the United States Supreme Court have flatly rejected this contention. *See Holland v. U.S.*, 348 U.S. 121, 136-137 (1954); *U.S. v. Hooks*, 780 F.2d 1526, 1530 (10th Cir. 1986).

Indeed, Justice Clark, writing for a unanimous Court, opined that "circumstantial evidence […] is intrinsically no different from testimonial evidence." *Holland*, 348 U.S. at 140. Justice Clark continued, concluding that the jury is tasked with weighing the "possibility of inaccuracy or ambiguous inference" and ultimately must "weigh[] the probabilities" of the defendant's innocence, based on both circumstantial and testimonial evidence. *Id.* The Tenth Circuit Court of Appeals has closely followed the *Holland* court's guidance, denouncing the theory "that the prosecution [is] under an

affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt" in order to sustain a defendant's conviction. *Hooks*, 780 F.2d at 1530. It follows then that "a criminal conviction may be sustained on wholly circumstantial evidence." *Id.* at 529.

In the PFRD, the Chief Magistrate Judge correctly explained that "when there are two conflicting stories, it is the jury's job to resolve the conflict." *See* (Doc. 17 at 16). Even though Mr. Parvilus denies the story as told by the State, thus denying that he harbored the requisite intent to be convicted of kidnapping, there is substantial circumstantial and testimonial evidence for a rational jury to infer that the elements of kidnapping have been satisfied, even if there is no "direct proof" of Mr. Parvilus' intentions. This evidence includes, for example: the testimony of Mrs. Parvilus presented at trial, Mr. Parvilus' possession of multiple weapons, and Mr. Parvilus' admitted killing of Mr. Smith. *See* (Doc. 17 at 15-17). As such, it cannot be asserted that, when viewing the evidence "in the light most favorable to the government," no rational jury could convict Mr. Parvilus of kidnapping. *See*, *U.S. v. Bush*, 405 F.3d 909, 919 (10th Cir. 2005). For these reasons, the Court finds no error in the Chief Magistrate Judge's findings on this issue and will overrule Mr. Parvilus' objection.

B. *Jury Instruction Errors*

Next, Mr. Parvilus objects to the Chief Magistrate Judge's finding that the errors in his jury instructions did not result in a deprivation of due process. (Doc. 19 at 6-10). In his Objections, Mr. Parvilus posits that the absence of a "use instruction" preceding the special verdict questions for kidnapping rendered his trial unfair. *Id.* at 6. In addition, Mr.

Parvilus contends that a "misstatement of law" in the jury instructions led to juror confusion, resulting in a violation of his right to due process. *Id.* at 7-10.

In the PFRD, the Chief Magistrate Judge explained that on direct appeal, the state court of appeals found that the lack of a special use instruction did not require reversal. (Doc. 17 at 20) (citing Doc. 13-2 at 84-85). In addition, the Chief Magistrate Judge noted that Mr. Parvilus "has not suggested how the state court of appeals' ruling was 'contrary to or involved an unreasonable application of, clearly established *federal* law.'" *Id.* (emphasis in original). In his Objections, Mr. Parvilus has not proffered any evidence to counter the Chief Magistrate Judge's finding, nor has he provided any argument regarding how the state court's decision contradicted federal law.

To establish that an erroneous jury instruction was "so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment," the petitioner must prove that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). This burden is "especially heavy" when no erroneous instruction was given, but rather the petitioner's claim of prejudice is based on the omission of an instructional explanation. *Id.* at 155. Indeed, the omission of an instruction "is less likely to be prejudicial than a misstatement of the law." *Id.* This heavy burden encompasses the court's recognition that a "judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Accordingly, a reviewing court must judge the challenged instruction not "in artificial isolation" but in the context of the case as a whole. *Id.* at 146-47.

As both the Chief Magistrate Judge and the state court of appeals judge opined, there is no evidence that the jury was confused or misdirected by the omission of the instruction. Further, as the state court of appeals judge aptly noted, "[t]he prosecutor discussed the special verdict forms in her closing argument and explained that in connection with kidnapping, the jury would have to decide whether [Mr. Parvilus] voluntarily freed [Mr. Smith] and [Mrs. Parvilus]" and "[t]he questions on the special verdict forms were self-explanatory." (Doc. 13-2 at 85). These facts negate the possibility of the omission of the special use instruction "infect[ing] the entire trial," such that Mr. Parvilus was denied due process. *See Henderson*, 431 U.S. at 154 (citation omitted). For these reasons, the Court finds no error in the Chief Magistrate Judge's findings on this issue and will overrule Mr. Parvilus' objection.

Next, Mr. Parvilus contends that a "misstatement of law" in his jury instructions for kidnapping resulted in an unfair trial. (Doc. 19 at 7). Specifically, he argues that the accidental use of the word "assault" instead of "false imprisonment" represents a misstatement of law requiring reversal. *Id.* at 7-8. The Chief Magistrate Judge found that even though the instruction is erroneous, "the law plainly requires more than a mere typographical error to have the instruction rendered unconstitutional." (Doc. 17 at 21). Thus, the Chief Magistrate Judge concluded, the misstatement cannot be deemed to have "infected the entire trial" as to compromise Mr. Parvilus' constitutional right to due process. *Id.* at 21-22.

The United States Supreme Court has been clear that when reviewing a state court's affirmation of jury instructions, the federal court must give "appropriate respect for the deliberative judgment of a state in so basic an exercise of its jurisdiction." *Cupp*,

414 U.S. at 149 (quoting *McNabb v. U.S.*, 318 U.S. 332, 340 (1943)). In *Cupp*, Chief Justice Rehnquist, delivering the opinion of a unanimous Court, opined that "even substantial unanimity among federal courts of appeals that the instruction in question ought not to be given" is insufficient by itself to render the conviction invalid. *Id.* at 146. The Tenth Circuit Court of Appeals continues to follow the reasoning articulated in *Cupp*, reaffirming that "before a federal court may overturn a conviction resulting from a state trial in which a challenged instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Grissom v. Carpenter*, 902 F.3d 1265, 1285 (10th Cir. 2018) (quoting *Cupp*, 414 U.S. at 146) (internal punctuation omitted).

Here, even if this Court were to view the use of the word "assault" instead of "false imprisonment" as a misstatement of law rather than a typographical error, Mr. Parvilus' claim does not rise to the level of a constitutional violation. The error in the instruction was not related to his kidnapping conviction, but rather the instruction was only to be considered by the jurors if they were contemplating between convicting Mr. Parvilus of false imprisonment or reaching a verdict of not guilty. *See* (Doc. 17 at 20-21). The instruction did not alter the presumption of innocence, nor did it increase the probability that he be found guilty of kidnapping. *See Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (opining that while the jury instruction "could have been more artfully drafted," it did not lead the jury to a conclusion of guilt nor did it alter the presumption of innocence, and the petitioner therefore failed to meet the "high standard" required to assert a violation of his constitutional rights). Mr. Parvilus' speculation that

the instruction may have influenced the juror's decision, without more, is insufficient to rise to the level of a constitutional violation. For these reasons, the Court finds no error in the Chief Magistrate Judge's findings on this issue and will overrule Mr. Parvilus' objection.

### C. _Ineffective Assistance of Counsel Claims_

Finally, Mr. Parvilus argues his trial counsel was ineffective for failing to argue the home he allegedly burglarized was either his own home or his shared marital home with Mrs. Parvilus. (Doc. 19 at 11-12). If trial counsel had done this, Mr. Parvilus argues, the State would not have been able to demonstrate that Mr. Parvilus' entry into the home was "unauthorized," a requisite element for a conviction of burglary in New Mexico. _Id._ Therefore, Mr. Parvilus contends, the State was relieved of its burden to satisfy each element beyond a reasonable doubt – because trial counsel essentially "conceded" his unauthorized entry into the home. _Id._ at 11-16. In addition to arguing that counsel should have pursued a different tactical strategy, Mr. Parvilus contends that he did not understand counsel's arguments, nor did he consent to counsel's "esoteric legal theory" of his case. _Id._ at 12.

In the PFRD, the Chief Magistrate Judge explained the two-part test Mr. Parvilus must satisfy to surmount _Strickland_'s high bar, to succeed on an ineffective assistance of counsel claim. (Doc. 17 at 23-24). Further, the Chief Magistrate Judge noted, when a _Strickland_ challenge is coupled with the highly deferential standards of habeas proceedings, the litigant is tasked with proving that there is no "reasonable argument that counsel satisfied _Strickland_'s deferential standard." _Id._ at 24 (quoting _Harrington v. Richter_, 562 U.S. 68, 88 (2011)) (internal punctuation omitted). The Chief Magistrate

Judge concluded that because the factual circumstances seemed to correlate more with a finding that the home belonged to Mrs. Parvilus, counsel's decision to not argue that Mr. Parvilus was authorized to enter was objectively reasonable. (Doc. 17 at 25).

After counsel's defense has failed at trial, it is "all too tempting" to criticize and second-guess counsel's strategy or tactics. *Strickland*, 466 U.S. at 689. To combat the likelihood of dissecting counsel's strategy with hind-sight laden conjecture, judicial scrutiny of counsel's performance must be "highly deferential." *Id.* The court must assess counsel's conduct based on the facts of the case, as they were viewed and understood at the time of counsel's decision. *Id.* at 690. The standard of counsel's conduct is reasonableness – not success on the merits, nor perfection. *See id.* Accordingly, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.*

Mr. Parvilus challenges counsel's performance because it was "based upon a legal theory she hadn't thoroughly researched." (Doc. 19 at 14). To make such an assertion criticizes not only counsel's conduct, but also the New Mexico state court judge who agreed with counsel and the New Mexico appellate judges who affirmed the argument on appeal. Counsel's argument, although not accepted by the New Mexico Supreme Court, demonstrated thorough research of not just the criminal law relevant in Mr. Parvilus' case, but also the New Mexico civil statutory code. No attorney can predict a judge's decision with absolute certainty, and Mr. Parvilus' counsel cannot be faulted for crafting a creative argument that was accepted by not one, but two, New Mexico state courts. *See Harrington*, 562 U.S. at 110 ("[A]n attorney may not be faulted for a

reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities.").

In hindsight, it is easy to assert that, because the strategy ultimately failed at the New Mexico Supreme Court level, counsel should have presented a different argument. However, even notwithstanding counsel's success with this strategy in the trial and appellate courts, the strategy was objectively reasonable given the facts of the case. As the Chief Magistrate Judge noted, the factual circumstances in this case support an argument that the home Mr. Parvilus burglarized belonged to his wife. *See* (Doc. 17 at 24). Specifically, Mr. Parvilus entered the home through a window after purchasing tools to gain entry. *Id.* It was therefore not unreasonable for trial counsel to make the argument that the home belonged to Mrs. Parvilus, based on the facts of the case as they were understood at the time of trial. *See Strickland*, 466 U.S. at 690.

Next, Mr. Parvilus contends that he did not understand counsel's legal theory at trial and did not consent to the use of the civil statute to serve as his defense. As a preliminary matter, Mr. Parvilus did not raise this contention in his Petition and the argument is therefore waived. *See Marshall*, 75 F.3d at 1426 (concluding that when a petitioner raises an argument for the first time in his objections, the argument is deemed waived). In addition, it does not appear that Mr. Parvilus presented this argument to the New Mexico state courts. As such, this Court cannot adequately inquire into whether the state courts' application of *Strickland* was unreasonable. *See Harrington*, 562 U.S. at 110 (explaining that the inquiry when a habeas petitioner asserts ineffective assistance of counsel is whether the state court's application of *Strickland* was supported by "reasonable justification."). Thus, even assuming that Mr. Parvilus' argument has not

been waived, the Court has no state court decision to review for constitutional deficiencies.

### III.    Conclusion

For the foregoing reasons, the Court finds that the Chief Magistrate Judge conducted the proper analysis and correctly concluded that the state courts' decisions were not contrary to, or unreasonable applications of, clearly established federal law, or resulted in an unreasonable determination of facts in light of the evidence presented. Therefore, Mr. Parvilus' Objections are overruled.

**IT IS THEREFORE ORDERED** that Mr. Parvilus' *Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody*, (Doc. 1), is **DENIED**, and this call shall be **DISMISSED WITH PREJUDICE**.

_____
CHIEF UNITED STATES DISTRICT JUDGE